[No. 13214.    Department One.    July 11, 1916.]

INTERNATIONAL MORTGAGE BANK, *Plaintiff*, v. LOUIS F.
HACHEZ *et al.*, *Defendants*, W. H. MATTHEWS, *Respond-
ent*, SPOKANE HARDWOOD FLOOR COMPANY *et al.*,
*Defendants*, O. C. MOORE, *Appellant*.[1]

MORTGAGES—ASSUMPTION BY MORTGAGEE—EVIDENCE — SUFFICIENCY.
A finding that a subsequent vendee had assumed to pay mortgages
is not sustained where it appears by the uncontradicted evidence of
three witnesses that he expressly refused to purchase with assump-
tion of the mortgages, that the grantors were informed thereof and
agreed thereto, and that his deed with the assumption clause was
drawn by and delivered to agents and recorded without his knowl-
edge, and that he did not discover it until two years later.

ESTOPPEL—ASSUMPTION OF MORTGAGE—MISTAKE—RELIANCE UPON
CONDUCT. The payment of mortgage interest by a subsequent vendee
does not estop him from asserting that a clause whereby he assumed
payment of the mortgages was inserted in the deed by mistake, where
the conditions or relations of the parties have not been changed to
the disadvantage of any one; reliance on the conduct of another be-
ing an essential element of estoppel.

Appeal from a judgment of the superior court for Spo-
kane county, Webster, J., entered April 26, 1915, upon find-
ings in favor of a junior mortgagee, in an action to foreclose
a mortgage, tried to the court.   Reversed.

*Seabury Merritt, R. P. Woodworth,* and *O. C. Moore,* for
appellant.

*John M. Gleeson* and *A. G. Gray,* for respondent.

FULLERTON, J.—This appeal is founded on the cross-com-
plaint of a junior mortgagee, seeking to enforce a deficiency
judgment against O. C. Moore as a subsequent grantee, who
is alleged to have assumed the mortgage indebtedness.   There
was no contest over the foreclosure of the senior mortgage,
and no deficiency judgment sought by the senior mortgagee
against the subsequent grantees of the original mortgagor.

[1]Reported in 158 Pac. 991.

On June 7, 1910, Louis F. Hachez and wife executed a mortgage on lot 3, block 2, Jerome Park addition to Spokane, Washington, to secure the payment of a promissory note for the sum of $3,000. The loan was made by the Union Mortgage Company, and the mortgage to that company was assigned on June 23, 1910, to the International Mortgage Bank, the plaintiff in the foreclosure proceedings. The Hachez mortgage provided that the mortgagor should be liable to a deficiency judgment. On September 30, 1910, Hachez and wife executed a second mortgage on the same property to W. H. Matthews to secure a note for $1,200, payable in monthly installments of $30 each. On December 9, 1910, Hachez and wife conveyed the property to C. D. Sprague, who assumed the mortgages thereon. On December 19, 1910, Sprague executed an additional mortgage on the same premises to Matthews to secure a promissory note for $660, payable in monthly installments of $30 each, beginning March 1, 1914. On June 22, 1911, Sprague conveyed the premises to J. K. Shotwell, who assumed and agreed to pay the three mortgages and the outstanding city assessments. In October, 1911, Shotwell and wife conveyed the property by warranty deed to O. C. Moore, appellant here, who himself parted with title before this suit was brought. The deed to Moore contains the assumption clause which gives rise to this controversy.

The International Mortgage Bank elected to declare the whole of the principal mortgage to be due by reason of default in payment of interest, and on July 14, 1914, filed its complaint in foreclosure, making parties defendant the mortgagors, Louis F. Hachez and wife, the junior mortgagee, W. H. Matthews, and certain junior lien claimants. The senior and junior mortgagees entered into a stipulation by which they agreed to make the subsequent grantees, Shotwell and wife, Sprague and Moore, parties defendant, and the court, on October 15, 1914, made an order to that effect and

granted defendant Matthews leave to amend his answer so as to conform to the order. The amended answer and cross-complaint of Matthews, the junior mortgagee, was filed October 22, 1914, together with the summons requiring Moore, Sprague and the Shotwells to appear and defend such cross-complaint.

The cross-complaint alleged the execution of the two junior mortgages in favor of W. H. Matthews, one for the sum of $1,200, on which a balance of $30, with interest, is alleged to be unpaid, and one for $660, on which it is alleged that no payments have been made except interest up to December 30, 1913; that the mortgagee had elected to declare the whole amount due, under the terms of the mortgages; that Moore, as a subsequent grantee, assumed and agreed to pay the mortgages; and that Moore had paid all installments of principal and interest thereon up until November 28, 1913. The prayer of the cross-complaint was for foreclosure of the two junior mortgages, with attorney's fees on each foreclosure, and for a deficiency judgment against Moore.

Moore, in his answer, admitted the conveyance of the property to him, but denied that he agreed to assume or pay the mortgages, and affirmatively alleged that it was distinctly understood and agreed between him and his grantor, at the time the property was conveyed to him, that he would not personally assume or obligate himself to pay such mortgages, and that any provision in said deed to the contrary was inserted by fraud or mistake, without consideration, and without his knowledge, consent, or approval; that he had agreed to purchase the equity only of his grantors, and that he had made payments on the principal and interest of the mortgages merely to protect such equity; that he did not see or come into possession of the deed to himself until after the same had been placed of record; and that he had transferred and disposed of all interest in the mortgaged premises long prior to the institution of the present suit. The

reply of Matthews denied all the affirmative allegations of Moore's answer, except the allegation that Moore had parted with his interest in the mortgaged premises.

The deed to Moore was executed by the Shotwells, in Oregon, on September 28, 1911, and forwarded to the real estate firm of Chambers & Larson, in Spokane, by whom it was filed for record October 26, 1911, without the knowledge of Moore, with instructions to the county auditor to deliver it to Moore after the recordation had been completed. Moore testified that he did not know at the time that the deed was recorded that the assumption clause was in it, and did not discover it until after he had transferred the property some two years later; that he had told Shotwell that he would not assume the mortgages or obligate himself personally. The transfer was negotiated through the real estate firm of Chambers & Larson. Chambers and Larson both testify that Moore stated to them that he would not take the property if he had to assume the incumbrances upon it; that he was willing to purchase the equity, and would keep up the payments as long as he held the property, but did not want to be personally bound. Larson testified that this fact was made known to the grantors, and that they consented to make the deed on those terms, J. K. Shotwell, who acted for himself and wife, saying: "We don't care whether he assumes it or not; that is all right with us." There was no evidence contradicting the testimony of Moore, Chambers or Larson, and no explanation was offered as to how the assumption clause came to be inserted in the deed. It can be inferred, however, that it was copied from a preceding deed by the scrivener who drafted it. After receiving the deed, Moore paid the mortgage installments regularly falling due from October 25, 1911, until November 30, 1913, in which time he paid $900 of the principal sum of the $1,200 mortgage, together with accrued interest amounting to $107.80; and paid the accrued interest on the $660 mortgage during the same period, which amounted to something over $100.

This he testifies was done merely to protect his equity, and not under assumption of the debt.

The court found that Moore had assumed and agreed to pay the mortgages held by the cross-complainant, Matthews, and rendered judgment against Moore for any deficiency thereon. From this judgment, Moore appeals.

It is our opinion that the evidence does not justify the holding that Moore had assumed the mortgages. It is contrary to the positive testimony of Moore, Larson and Chambers, and is supported only by the fact that Moore for a period of two years had met the monthly installments of principal and interest falling due under the mortgages. But this fact, standing alone, is not sufficient to show an assumption of the mortgage indebtedness. In passing on this same question in *Drury v. Hayden,* 111 U. S 223, the court said:

"The payment of interest on the mortgage notes would naturally be made by Drury to prevent a foreclosure of the mortgage on his land, and cannot be held to be an affirmance of an agreement of which he had no actual knowledge. The clause containing the agreement being conclusively proved to have been inserted in the deed by mistake of the scrivener, without the knowledge and against the intention of the parties, a court of equity, upon a bill filed by Drury for the purpose, would have decreed a reformation of the deed by· striking out the clause."

And in *Elliott v. Sackett,* 108 U. S. 132, the court says:

"The fact that Elliott made two payments of the interest on the incumbrance is not inconsistent with his not having assumed the payment of the incumbrance. As owner of the property subject to the incumbrance, and desirous of retaining it so long as there was any value in the equity of redemption, he would naturally pay the interest to save a foreclosure."

To estop a grantee from showing that a clause assuming incumbrances was inserted in a deed by mistake, it must be shown that some party or privy to the instrument has acted thereon to his prejudice. Here there is no such showing. The

position of respondent has not been changed to his disadvantage by reason of such recital or the subsequent conduct of Moore. The element essential to constitute estoppel, namely, reliance upon the conduct of another to the detriment of the party complaining, is wanting. See, *Bisbee v. Carey*, 17 Wash. 224, 49 Pac. 220; *Murray v. Briggs*, 29 Wash. 245, 69 Pac. 765.

The judgment against appellant is reversed, and the cause remanded with directions to enter judgment of dismissal as to him.

MORRIS, C. J., MOUNT, ELLIS, and CHADWICK, JJ., concur.